Virginia REUTZEL, Appellant,

v.

MISSOURI DIVISION OF EMPLOY-
MENT SECURITY and Columbia
Sportswear, Inc., Respondents.

No. 21575.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 13, 1997.

Michael Moroni, Bloomfield, for appellant.

Marilyn Green, Cynthia Quetsch, Div. of Employment Security, Jefferson City, for Div. of Emp. Security.

PARRISH, Presiding Judge.

Virginia Reutzel (claimant) appeals a decision of the Missouri Labor & Industrial Relations Commission (the commission) that disqualified claimant from receiving unemployment benefits. The commission held that claimant was disqualified from receiving benefits because she voluntarily terminated her employment with Columbia Sportswear, Inc. (employer) without good cause. This court affirms.

On February 8, 1996, claimant became ill at work. She was taken to a hospital where she was diagnosed as having a blood clot in her aorta. She was placed on sick leave for a period of 26 weeks.

On July 9, 1996, employer's personnel manager sent claimant a letter notifying her that her sick leave would expire August 16, 1996. Claimant was advised that if she failed to report to work on August 19, 1996, employer would consider her employment terminated.

Claimant called the personnel manager after receiving the letter. Claimant told the personnel manager her next scheduled doctor's appointment was October 8, 1996. The personnel manager advised claimant that employer did not want claimant off work that long.

Claimant testified that she offered to come back to work in her wheelchair. The personnel manager told claimant that employer's insurance carrier would not permit her to work in a wheelchair or a walker. Claimant told the personnel manager she could return to work in a brace. Claimant testified, "She said if you could do your job in a brace I guess we can and that's all she ever said about it."

Claimant called for an earlier doctor's appointment after she received employer's letter notifying her she would have to return to work August 19. She scheduled an appointment for August 22. However, she did not contact employer further until August 26 when she notified employer that she could come back to work—claimant's doctor released her to return to work when he saw her August 22. Claimant learned she did not have a job. She filed her initial claim for unemployment benefits August 30, 1996.

The Division of Employment Security (the division) determined claimant was disqualified from receiving benefits because she voluntarily left work without good cause attributable to her employer. In its review the commission concluded:

> This case is similar to those cases involving leaves of absence. An employee who takes a medical leave of absence without a guarantee of re-employment has voluntarily terminated employment. *See also Lake v. Labor and Industrial Relations Commission*, 781 S.W.2d 207, 208–209 (Mo.App. 1989); *Trail v. Industrial Commission*, 540 S.W.2d 179, 182–183 (Mo.App.1976); *Division of Employment Security v. Labor and Industrial Relations Commission*, 617 S.W.2d 620 (Mo.App.1981). In this instance, the claimant was guaranteed a job only if she returned to work by August 19, 1996. She had no guarantee of a job subsequent to that date. Her separation from employment is a voluntary quit rather than a discharge.
>
> It also can not be said that the voluntary quit was for good cause attributable to the work or the employer. Only if the physical disability is caused or aggravated by the working conditions is there "good cause" for terminating employment. *Bussman [Bussmann] Mfg. Co. v. Industrial Commission of Missouri*, 327 S.W.2d 487 (Mo.App.1959). The burden of establishing that fact lies with the claimant.

*O'Dell v. Division of Employment Security*, 376 S.W.2d 137, 142 (Mo.1964). The claimant presented no evidence indicating that her medical condition which necessitated her leave was work related.

■ "The order of the commission is subject to review by the courts to determine whether it is 'authorized by law' and whether it is 'supported by competent and substantial evidence upon the whole record'. Mo. Const. art. V, § 18." *Pulitzer Pub. Co. v. Labor & Indus. Relations Comm'n*, 596 S.W.2d 413, 417 (Mo.banc 1980).

The findings of the Commission as to facts, if supported by competent and substantial evidence and in the absence of fraud, are conclusive. § 288.210, RSMo Supp.1995. This court reviews the evidence in a light most favorable to the findings and decision of the Commission and all reasonable inferences therefrom disregarding all opposing and unfavorable evidence. *Pulitzer Pub. Co. v. Labor & Industrial Relations Comm'n*, 596 S.W.2d 413, 417 (Mo.banc 1980).

*Brawley & Flowers, Inc. v. Gunter*, 934 S.W.2d 557, 562 (Mo.App.1996).

■ Claimant's first point on appeal asserts the commission's finding that claimant did nothing to alert employer that she needed "a few extra days" in which to consult her doctor is not supported by competent and substantial evidence. Claimant contends "the undisputed testimony shoes [sic] that the claimant did contact the employer to discuss this matter."

The finding to which Point I is directed was made by the division's appeals tribunal and adopted by the commission. The evidence disclosed that claimant contacted employer after receiving its letter dated July 9, 1996. Her next doctor's appointment was October 8, 1996. After her conversation with employer's personnel manager in which claimant was told she would have to return to work August 19, she sought an earlier appointment. She scheduled an appointment with her doctor for August 22, 1996.

Claimant was asked whether she told employer that she had scheduled a doctor's appointment for August 22, 1996. She answered, "No." She was asked what she did to resolve the problem that her sick leave expired prior to her doctor's appointment. She answered, "I don't guess I did anything." Point I is denied.

■ Points II and III assert the commission erroneously applied the law in denying claimant benefits. Point II contends the commission erred in denying claimant benefits because she "was discharged and did not voluntarily leave her employment because the employer terminated her job at the end of her sick leave."

■ "The burden is on the claimant to prove eligibility for benefits." *Sokol v. Labor & Indus. Relations*, 946 S.W.2d 20, 23 (Mo.App.1997). When an employer claims an employee voluntarily left his or her employment without good cause attributable to the employer, it is the employee's burden to prove that is not the case. *Id.* This may be done by the employee showing he or she left work for good cause attributable to the employer, or by the employee showing he or she did not voluntarily leave work but was discharged. *Id.*

*Turner v. Labor & Indus. Relations Comm'n*, 793 S.W.2d 191 (Mo.App.1990), involved facts similar to those in this case. In *Turner* an employee obtained permission from her employer to be off work for at least a week for hospitalization. The employee checked out of the hospital against medical advice before the week expired. The employer had a policy, of which the employee was aware, that failure to report for work or contact the employer for three consecutive days after a period of hospitalization was uniformly treated as self-termination.

The employee had been admitted to the hospital on August 16. The employer was notified of her hospitalization on August 17. She checked herself out of the hospital on August 18 but did not return to work until August 25. Upon returning to work she found her desk had been cleared out; that she no longer had a job.

The court held that the employee in *Turner* was not entitled to benefits because her actions in not timely notifying her employer or returning to work amounted to her volun-

tarily terminating her employment. The court said:

> It is clear that the direct and immediate cause of claimant's unemployment was her inaction in not notifying her employer of any need to be absent, or intent to be absent for more than three consecutive days after checking out of the hospital against medical advice on Monday, August 18, 1986. This is a direct violation of a well known and enforced company policy providing that an individual's failure to show, or to provide notice for three consecutive days, constituted a self-termination or a voluntary quit.

793 S.W.2d at 195. The court in *Turner* concluded that the commission's determination that the employee had voluntarily quit her job was supported by competent evidence and substantial evidence on the whole record. *Id.*

Here, as in *Turner*, claimant was advised when she would be required to return to work in order to retain her job. She failed to do so. The commission's decision that this amounted to a voluntary termination of employment by claimant is supported by competent and substantial evidence on the whole record. Point II is denied.

Point III asserts the commission erred in disallowing claimant benefits "because this case is more closely analogous to *G.C [sic] Services v. Labor and Industrial Relations Commission* [, 913 S.W.2d 411 (Mo.App. 1996)] . . . which is a discharge case and not a leave of absence case and hence the claimant's separation from work should be determined to be a discharge, and since misconduct was not shown the claimant should be eligible for benefits."

As Point III states, in *G.C. Services* the employee was discharged; thus, the question to be determined was whether the discharge occurred due to misconduct connected to the employee's work. However, in this case, as discussed in Point II, claimant's actions resulted in a voluntary termination of employ-

ment. This not being a discharge case, there was no misconduct question for determination. Claimant's reliance on *G.C. Services* is misplaced. Point III is denied.

■ Point IV asserts the commission erred in denying benefits because "it was agreed that she could come back to work in a brace and further the claimant and the employer had discussed the date of the claimant's doctor's appointment." As discussed with respect to Point I, the only doctor's appointment claimant told employer about was the one scheduled for October 8. After being advised she was to return to work August 19, claimant scheduled a doctor's appointment for August 22; however, employer was never notified of this. Claimant testified that she did nothing to inform employer of the August 22 appointment. The fact that there was a discussion regarding claimant returning to work in a brace is meaningless. She did not return to work as directed.[1] Point IV is denied.

The decision of the commission is affirmed.

MONTGOMERY, C.J., and BARNEY, J., concur.

---

1. "An employee whose employment terminates because of personal illness unrelated to her employment is considered to have voluntarily left her work without good cause attributable to her employer unless the illness was caused or aggravated by her work." *Lake v. Labor & Indus. Relations Comm'n*, 781 S.W.2d 207, 208 (Mo. App.1989). Claimant's illness was unrelated to her employment.