Deborah D. TAYLOR, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. 26424.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 26, 2005.

Deborah D. Taylor, pro se.

Alan J. Downs, Jefferson City, MO, for respondent.

JAMES K. PREWITT, Judge.

Claimant–Appellant Deborah D. Taylor appeals an order of the Labor and Industrial Relations Commission ("Commission") affirming a decision by the appeals tribunal of the Division of Employment Security disqualifying Appellant from receiving unemployment benefits until sufficient wages were earned, pursuant to Section 288.050.1(1). The Commission found that Appellant voluntarily left her work without good cause attributable to her work or her employer, State Farm Insurance Company ("State Farm").

We take the facts from the brief record. Appellant worked for State Farm Insurance agencies in various capacities since 1984. In March of 2000, Appellant was employed by State Farm Insurance Company as a Trainee Agent in Hannibal, Missouri. On May 6, 2003, Appellant requested a lateral transfer to " 'anywhere' in the Southeast/Southwest Agency Field Office area," due to her husband's parents' declining medical conditions and her husband's back disability. This request was made by Appellant to her Agency Field Executive, Mike Heitman, and her Agency

Field Consultant, Tway Branstetter, at a meeting in Columbia, Missouri.

Subsequently, Appellant was advised by Branstetter that a position would be opening in the Kimberling City area, and Appellant requested she be considered for the position. In August, 2003, she was informed that the position had been filled by someone else. This information was provided by Heitman and Appellant's Vice President of Agency, Curt Drier. Both Heitman and Drier then advised Appellant to submit a letter resigning her Trainee Agent status, as they contended no other openings were foreseeable.

Appellant objected and was "adamant" in her explanation to both supervisors that she wanted a lateral transfer and did not want to quit her job. She stated that Heitman told her "what to put in [the resignation letter]" and that he wanted the resignation letter before August 8, 2003. Heitman also told Appellant at that time to designate an effective date for her resignation, although the date would not be "set in concrete." Drier told her to provide a target date "no less than 90 days out, since they needed time to find [her] replacement."

On August 7, 2003, Appellant sent her letter of resignation to Mike Heitman, citing December 31, 2003 or "upon the successful closing of the sale of [her] home, . . . whichever comes first" as a "target" date for termination of her employment with State Farm.

On September 9, 2003, Appellant met with the Central Zone Agency Vice President, Michael Matlock, and Mary Bitzer, Senior Vice President, in Clayton. Appellant reiterated to them that she "wanted a lateral move[,] not a termination[,]" but had been told by Heitman and Drier to write a letter of resignation. Matlock told her that it was State Farm's "position that

people are offered an Agency one time and you have to make the best of it."

Appellant testified that on December 1, 2003, she requested to be allowed to extend her termination date until March 31, 2004. However, she was informed on December 16, 2004, by Heitman, that she would not be allowed to stay beyond the December 31, 2003 date. Her employment with State Farm ended on December 31, 2003.

Appellant filed a claim for unemployment benefits which was denied for the reason that she "quit because she was moving." In its determination, the Division of Employment Security ("Division") determined that Appellant was disqualified because she left her employment voluntarily without good cause attributable to her work or employer on December 31, 2003.

Appellant appealed the Division's determination to the Appeals Tribunal which affirmed the deputy's determination, citing its conclusion that Appellant quit voluntarily. Appellant was the only one to offer testimony at the hearing held by means of a telephone conference. On appeal to the Commission, the Commission affirmed and adopted the decision of the Appeals Tribunal, finding that the decision was "fully supported by the competent and substantial evidence on the whole record."

The determination included a finding that Appellant told her supervisor that she "planned to move" and that some time after this, Appellant's "supervisor said that the claimant had to write a resignation letter giving a time frame[,]" but "claimant objected to writing a resignation letter." It concluded that "claimant initiated the separation by stating that she intended to move from her present location due to family health issues[,]" which it determined was "a personal reason, not a problem with the job." It further concluded that "[t]he claimant never rescinded her

resignation[,]" that "she simply asked to have her resignation date postponed[,]" and "that the claimant quit."

■ Appellant appears *pro se.* In her sole point on appeal, she contends that the Commission erred, as its decision was "unsupported by competent and substantial evidence upon the whole record, ... in that the only competent evidence before the [C]omission was that of the Appellant in which she testified and provided documents showing to the Commission that she was forced to write a resignation letter and told her supervisors several times, both before and after writing the letter, that she did not want to leave her position."

■ Under § 288.210, the factual findings of the Commission are conclusive if, absent fraud, they are supported by competent and substantial evidence, and review of the Commission's decision by this Court is confined to questions of law. This Court is not bound by the Commission's conclusions of law or its application of law to facts, and questions of law are reviewed independently. *Shelby v. Hayward Baker, Inc.,* 128 S.W.3d 164, 165–66 (Mo.App.2004). On matters of witness credibility and resolution of conflicting evidence, deference is accorded to the Commission's determinations. *Id.* at 166.

■ A claimant is not entitled to unemployment benefits if he or she voluntarily quits his or her job absent good cause attributable to the work or the employer. § 288.050.1(1), RSMo; *Wingo v. Pediatric and Adolescent Med. Consultants, Inc.,* 932 S.W.2d 898, 899 (Mo.App.1996). "Good cause" to voluntarily terminate employment is that conduct which conforms to what an average person, acting with reasonableness and in good faith, would do. *Id.*

■ Claimant has the burden to prove eligibility for benefits. *Reutzel v. Mo. Div. of Employment Sec.,* 955 S.W.2d 239, 241 (Mo.App.1997). "When an employer claims an employee voluntarily left his or her employment without good cause attributable to the employer, it is the employee's burden to prove that is not the case." *Id.* "This may be done by the employee showing he or she left work for good cause attributable to the employer, or by the employee showing he or she did not voluntarily leave work but was discharged." *Id.*

■ Whether an employee voluntarily left employment or was discharged is a factual determination within the purview of the Commission, and this Court must affirm the Commission's determination if it is supported by competent and substantial evidence on the record as a whole. *Worley v. Div. of Employment Sec.,* 978 S.W.2d 480, 482 (Mo.App.1998). The relevant facts and circumstances surrounding an employee's cessation of employment are controlling. *Id.* at 483.

Here, the Commission found: (1) that Appellant requested a lateral move within the company; (2) that she applied for a position with State Farm in another city; (3) that upon informing Appellant that she would not be offered that position her "supervisor said that [Appellant] had to write a resignation letter giving a time frame"; and, (4) that Appellant objected to writing the resignation letter but later did so. However, we believe these findings to be inconsistent with the conclusions that Appellant "planned to move" and "voluntarily left work ... without good cause attributable to the work or the employer."

We do not find that the record supports the Commission's conclusion. Appellant was the only witness to testify. There is nothing in the record indicating that State Farm disputed Appellant's version, and there is no other evidence to the contrary.

■ Appellate review is *de novo* in determining "whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment." *Sokol v. Labor & Industrial Relations Comm'n*, 946 S.W.2d 20, 24 (Mo.App.1997). We find that the record establishes that Appellant did not initiate her separation from State Farm; rather, it was State Farm that insisted that she tender her resignation. There was no evidence that Appellant "planned to move" without acquiring a position with State Farm in a different location, nor that she "intended to move" without such a position. The record only reflects that Appellant would move if she acquired a position with State Farm in a certain geographical area. Appellant should not have been disqualified, as she did not leave work voluntarily.

Accordingly, the order of the Commission is reversed and the cause remanded to the Commission for it to grant Appellant the benefits she sought.

GARRISON, P.J., and RAHMEYER, J., concur.