In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO
MICHAEL MENLEY, ) No. ED109507
 )
 Claimant/Appellant, )
 ) Appeal from the Labor and
 vs. ) Industrial Relations Commission
 )
JJF & C, LLC., )
 )
 Employer/Respondent, )
 )
 and )
 )
DIVISION OF EMPLOYMENT )
SECURITY, )
 )
 )
 Respondent. ) Filed: November 30, 2021

 OPINION

 Michael Menley (Appellant) appeals the decision of the Labor and Industrial Relations

Commission (Commission) disqualifying him from receiving unemployment benefits under

§ 288.0501 because Appellant voluntarily terminated his employment without good cause

attributable to his work or employer. Appellant claims the Commission erred in finding he

voluntarily terminated his employment without good cause.2 We affirm the Commission's

1
 All statutory references are to RSMo. 2020 unless otherwise indicated.
2
 Appellant raises a second point asserting that his employer violated his rights by failing to offer him an alternative
position or a leave of absence under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. Appellant
did not raise this issue at any point in the record and is asserting it now for the first time on appeal. “This Court may
only address issues that were determined by the Commission and may not consider issues which were not before the
Commission.” Wheeler v. Pinnacle Auto. Prot., Inc., 413 S.W.3d 721, 729 (Mo. App. E.D. 2013); Taylor v. St. Louis
decision because Appellant voluntarily severed the employment relationship when he did not

return to work, and he failed to establish good cause, meaning his illness or disability was

attributable to his work or to his employer.

 Factual and Procedural Background

 Appellant started working as a salesman for JJF & C, LLC (Employer) on January 16,

2019. Among his job responsibilities, Appellant was required to drive between various locations.

In February 2020, Appellant met with his employer to discuss Appellant’s concerns regarding a

recently developed eye condition and its effect on his ability to continue working. Appellant, his

supervisor, and the company owner agreed that Appellant would take a leave of absence until he

was able to return to work. Following the meeting, Appellant did not return to work and

Appellant’s supervisor and Employer lost contact despite efforts to reach him.

 Appellant subsequently filed a claim for unemployment benefits with the Division of

Employment Security (Division). On March 30, a deputy for the Division determined Appellant

was disqualified from receiving benefits because he voluntarily quit without good cause

attributable to his work or employer. On April 13, Appellant appealed the deputy’s decision to

the Division’s Appeals Tribunal.

 On November 30, the Appeals Tribunal held an evidentiary hearing where Appellant, his

supervisor, and Employer’s human resources manager testified about the circumstances

surrounding Appellant’s departure. Appellant testified he was discharged. Appellant’s supervisor

testified the parties mutually agreed Appellant would take a leave of absence, but that Appellant

stopped responding to telephone calls and Employer lost contact with him.

Arc, Inc., 285 S.W.3d 775, 776 (Mo. App. E.D. 2009); Davis v. Transportation Sec. & Div. of Emp. Sec., 295
S.W.3d 594, 597 (Mo. App. E.D. 2009) (“Issues not raised before the Commission may not be raised on appeal”).
We will not find the Commission erred “for not analyzing every conceivable unraised alternative.” Wheeler, 413
S.W.3d at 729. Accordingly, Appellant’s second point is waived for appellate review.

 2
 On December 2, the Appeals Tribunal affirmed the deputy’s decision to disqualify

Appellant from receiving benefits because Appellant voluntarily quit without good cause

attributable to his work or employer. The Appeals Tribunal concluded that neither Employer nor

Appellant’s work caused, contributed to, or aggravated Appellant’s eye malady. In other words,

the Appeals Tribunal relied on Appellant’s failure to show a causal connection between his eye

condition and his work or Employer. To the extent the testimony was contradictory, the Appeals

Tribunal found Employer “more persuasive since the employer’s testimony was corroborated by

a witness,” who was logical and likely conveyed what actually unfolded.

 Subsequently, Appellant appealed to the Commission. On February 9, 2021, the

Commission affirmed the Appeals Tribunal and adopted its decision, finding it was “fully

supported by the competent and substantial evidence on the whole record and it [was] in

accordance with the relevant provision of the Missouri Employment Security Law.”

 Point on Appeal

 On appeal, Appellant claims the Commission erred in finding Appellant voluntarily quit

his employment without good cause attributable to his work or employer.

 Standard of Review

 When reviewing the Commission’s decision to deny unemployment benefits, our analysis

is governed by § 288.210, which reads in pertinent part:

 The findings of the commission as to the facts, if supported by competent and
 substantial evidence and in the absence of fraud, shall be conclusive, and the
 jurisdiction of the appellate court shall be confined to questions of law. The court,
 on appeal, may modify, reverse, remand for rehearing, or set aside the decision of
 the commission on the following grounds and no other:
 (1) That the commission acted without or in excess of its powers;
 (2) That the decision was procured by fraud;
 (3) That the facts found by the commission do not support the award; or
 (4) That there was no sufficient competent evidence in the record to warrant the
 making of the award.

 3
Smith v. Greyhound Bus Company, 477 S.W.3d 55, 59 (Mo. App. E.D. 2015).

 Appellate review “is limited to deciding whether the Commission’s decision is supported

by competent substantial evidence and authorized by law.” Ewing v. SSM Health Care, 265

S.W.3d 882, 886 (Mo. App. E.D. 2008) (internal quotations omitted). Viewing the evidence and

reasonable inferences in the light most favorable to the Commission’s decision, we will affirm

the decision if, based upon the entire record, we find that the Commission could have reasonably

made its findings and reached this result. Id.; Cotton v. Flik Intern. Corp., 213 S.W.3d 189, 192

(Mo. App. E.D. 2007). The claimant “generally has the burden of showing that he is eligible for

benefits” meaning the claimant must prove he left work involuntarily or, if he left voluntarily,

that he did so with good cause attributable to the work or to the employer. Berger v. Scroll

Compressors, LLC, 473 S.W.3d 727, 731 (Mo. App. S.D. 2015) (citing Harris v. Division of

Employment Security, 350 S.W.3d 35, 39 (Mo. App. W.D. 2011)).

 Discussion

 The controlling statute in this case, § 288.050.1(1), provides that an employee shall be

disqualified from receiving benefits if the deputy finds:

 That the claimant has left work voluntarily without good cause attributable to such
 work or to the claimant’s employer . . . “Good cause”, for the purposes of this
 subdivision, shall include only that cause which would compel a reasonable
 employee to cease working or which would require separation from work due to
 illness or disability . . .”

 In Difatta-Wheaton v. Dolphin Capital Corp., 271 S.W.3d 594, 597-98 (Mo. banc

2008), the Missouri Supreme Court reinforced the applicability of this statute by noting

that all claimants who leave work involuntarily and those claimants who leave voluntarily

with good cause are eligible for benefits under the statute. However, those who leave

work voluntarily and without good cause are barred from receiving benefits. Id.

 4
 A. Appellant voluntarily left his employment.

 “The Commission’s determination of whether an employee voluntarily left his

employment or was discharged is ordinarily . . . a factual determination.” Morris v. Glenridge

Children’s Ctr., Inc., 436 S.W.3d 732, 736 (Mo. App. E.D. 2014). “An employee leaves work

voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or

subjected to layoff by the employer.” Gray v. City of St. Louis, Collector’s Office, 472 S.W.3d

643, 646-47 (Mo. App. E.D. 2015). “[W]hether an employee quits or is discharged may be

determined by examining whether the employer or the employee committed the final act

severing the employment relationship.” Cook v. Accord Bldg. Servs., LLC, 481 S.W.3d 893, 901

(Mo. App. E.D. 2016). The burden is on the claimant to prove he was discharged and did not

voluntarily terminate his employment. Cotton, 213 S.W.3d at 193. Evidence that the claimant

failed to take the steps necessary to preserve employment is sufficient to establish that the

claimant voluntarily terminated employment and thus bears the fault for his unemployment.

Madewell v. Division of Employment Sec., 72 S.W.3d 159, 165 (Mo. App. W.D. 2002); Difatta-

Wheaton, 271 S.W.3d at 597-98.

 We defer to the Commission’s resolution of conflicting evidence regarding factual

matters, weighing evidence, and witness credibility. Lombardo v. Brandt Investments, LLC, 400

S.W.3d 890, 893 (Mo. App. E.D. 2013). Essentially, the Commission’s determinations are

conclusive. Dearborn v. Great Southern Financial Corp., 422 S.W.3d 487, 494 (Mo. App. S.D.

2014) (citing Cotton, 213 S.W.3d at 193); Guccione v. Ray’s Tree Service, 302 S.W.3d 252, 257

(Mo. App. E.D. 2010). “When the Commission, as a trier of fact, has reached one of two possible

conclusions from the evidence, we will not reach a contrary conclusion even if we might have

reasonably done so.” Cotton, 213 S.W.3d at 192.

 5
 The parties do not dispute that Appellant met with his supervisor and the company owner

in February 2020, when they discussed his eye condition, its impact on his work performance

and potential solutions. At the evidentiary hearing, Appellant’s supervisor testified that during

the meeting Appellant, the company owner, and the supervisor agreed Appellant would take a

leave of absence. Following the meeting however, the employer lost contact with Appellant,

according to the supervisor. More specifically, he asserted that Appellant stopped answering

their calls and some time passed before Appellant returned the company phone. The supervisor’s

testimony indicated he was under the impression Appellant had quit and that Appellant’s

involuntary termination claim filed with the Division was “the first time [he was] hearing”

otherwise.

 Appellant testified he was discharged at the February meeting but suggested that his

departure was consensual because he said “it was more of a mutual—” before asked another

question. Appellant’s testimony was very brief, he did not present any exhibits, and he did not

cross-examine Employer’s witnesses.

 We defer to the Commission’s factual determination that Employer’s testimony was more

credible and we will not disturb this credibility finding on appeal. Cotton, 213 S.W.3d at 193;

Worley v. Division of Employment Security, 978 S.W.2d 480, 482 (Mo. App. W.D. 1998); Hise

v. PNK (River City), LLC, 406 S.W.3d 59, 68 (Mo. App. E.D. 2013). When viewing the evidence

collectively and in the light most favorable to the Commission’s decision, Appellant agreed to

take a leave of absence but failed to maintain contact with Employer indefinitely and effectively

failed to preserve his employment. Madewell, 72 S.W.3d at 165 (holding Claimant left her work

voluntarily because she failed to contact her employer about her return-to-work date after her

leave expired; in support of its holding, the court found Claimant “did not do what she

 6
reasonably could to preserve her position with the employer” and thus left herself “vulnerable to

discharge”). Here, Appellant effectively severed his employment relationship when failing to

communicate, declining to contact and ignoring Employer’s efforts to reach him. Actions like

this are outcome determinative pursuant to Missouri case law. See Id. In sum, the Commission’s

findings were supported by sufficient and competent evidence and we affirm its decision that

Appellant left work voluntarily.

 B. Appellant’s resignation was without “good cause” as defined in § 288.050.

 To remain eligible for benefits after voluntarily terminating employment, the claimant

bears the burden of proving “good cause attributable to such work or to the claimant’s

employer,” pursuant to § 288.050.1(1) (emphasis added). The phrase “attributable to his work or

to his employer” means that “the work or employer . . . creates the condition making it

unreasonable to expect this employee to continue [to] work.” Quik ‘N Tasty Foods, Inc. v.

Division of Employment Security, 17 S.W.3d 620, 626 (Mo. App. W.D. 2000) (citing Hessler v.

Labor & Indus. Relations Com’n, 851 S.W.2d 516, 518 (Mo. banc 1993)); Ewing, 265 S.W.3d at

887. “An employee whose employment terminates because of personal illness unrelated to her

employment is considered to have voluntarily left her work without good cause attributable to

her employer unless the illness was caused or aggravated by her work.” Lake v. Labor and Indus.

Relations Com’n, 781 S.W.2d 207, 208 (Mo. App. E.D. 1989).

 When a claimant alleges a medical reason as good cause for prompting his departure, he

must offer expert medical evidence proving a causal connection between his work and the

medical reason to establish his employment caused or aggravated the existing medical condition.

Mena v. Cosentino Group, Inc., 233 S.W.3d 800, 804 (Mo. App. W.D. 2007); Tucker v. United

Healthcare Services, Inc., 232 S.W.3d 636, 639 (Mo. App. S.D. 2007).

 7